UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIEN TRUNG LE a/k/a TRUNG KIEN LE,

      Petitioner,

v.

TROY GOODNOUGH, et al.,

      Respondents.

Case No. 26-cv-10563

Honorable Robert J. White

## OPINION AND ORDER GRANTING THE PETITION FOR A WRIT OF HABEAS CORPUS

I.    <u>Introduction</u>

Kien Trung Le filed a petition for a writ of habeas corpus, under 28 U.S.C. § 2241, challenging his detention pursuant to an August 1, 2025 final order of removal. The petition names United States Attorney General Pamela Bondi, United States Homeland Security Secretary Markwayne Mullin,[1] and United States Immigration and Customs Enforcement Field Office Director Kevin Raycraft as respondents (the

---

[1] The habeas petition actually names Kristi Noem as the Homeland Security Secretary. (ECF No. 1, PageID.9, ¶ 15). Since Markwayne Mullin assumed office as her successor on March 24, 2026, he is now "automatically substituted as a party." Fed. R. Civ. P. 25(d); *see also* United States Department of Homeland Security, Secretary of Homeland Security, https://www.dhs.gov/topics/secretary-homeland-security (last accessed Mar. 27, 2026).

"federal respondents").  Since Le is currently detained at the Michigan Inmate Dormitory Facility in Monroe, Michigan, he named the Monroe County Sheriff, Troy Goodnough, as a respondent as well.

Before the Court is Le's habeas petition. (ECF No. 1).  Sheriff Goodnough and the federal respondents opposed it. (ECF No. 6).  Le filed a reply. (ECF No. 7). The Court will decide the matter without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).[2]  For the following reasons, the petition is granted.

II.    Background

Le is a Vietnamese citizen. (ECF No. 1-2, PageID.32, ¶ 3; PageID.42).  He fled to the United States after protesting the Vietnamese government's "land confiscation policies." (*Id.*, PageID.32-33, ¶ 4).  Le entered the United States without inspection on January 24, 2025.[3] (ECF No. 1-2, PageID.33, ¶ 4).  He turned himself over to United States Border Patrol officers and requested asylum. (ECF No. 6-1, PageID.114, ¶ 5; ECF No. 1-2, PageID.33, ¶ 4).  The officers detained Le, issued him an expedited removal order, and released him on humanitarian parole. (ECF No. 6-1, PageID.114, ¶ 5; ECF No. 1-2, PageID.33, ¶ 5).

---

[2] A hearing is unnecessary because the habeas petition "present[s] only issues of law." 28 U.S.C. § 2243; *see also Washington v. Dove*, No. 05-5820, 2006 U.S. App. LEXIS 16742, at *9 (6th Cir. Apr. 25, 2006); *Edwards v. Parker*, No. 94-6368, 1995 U.S. App. LEXIS 9009, at *4 (6th Cir. Apr. 13, 1995).

[3] Sheriff Goodnough and the federal respondents maintain that Le entered the United States on December 19, 2024. (ECF No. 6-1, PageID.114, ¶ 4).

United States Immigration and Customs Enforcement ("ICE") officers arrested Le when he reported to the agency's Detroit field office for a check-in appointment on February 26, 2025. (ECF No. 6-1, PageID.114, ¶ 6; ECF No. 1-2, PageID.34, ¶ 6).  ICE issued him a notice to appear (Form I-862), charging him with applying for admission to the United States without the required documentation. (ECF No. 1-2, PageID.75-78). *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I).  While in custody, Le applied for asylum in the United States and withholding of removal to Vietnam. (*Id.*, PageID.116, ¶ 11).  An immigration judge held a hearing on the application on July 25, 2025. (*Id.*, PageID.116, ¶ 12).

On August 1, 2025, the immigration judge (1) ordered Le to be removed to Vietnam, (2) granted his application for withholding of removal on the ground that his "life or freedom" would be threatened upon his return there, and (3) denied his asylum application. (ECF No. 1-2, PageID.46-47).  Neither Le nor the Homeland Security Department appealed the immigration judge's decision. (ECF No. 6-1, PageID.116, ¶ 13).

ICE has since detained Le at the Michigan Inmate Dormitory Facility located in Monroe, Michigan. (*Id.*, PageID.116, ¶ 14).  The agency completed an initial post-removal order custody review on November 10, 2025. (ECF No. 1-2, PageID.50-52).  The deputy director of ICE's Detroit field office continued Le's detention after finding that (1) he posed a significant risk of flight pending his removal, and (2) the

agency expected to receive travel documents to effectuate Le's removal, and that removal was practicable and likely to occur in the reasonably foreseeable future. (*Id.*, PageID.50).

On January 26, 2026, ICE's Detroit field office completed a 180-day post-removal order custody review. (ECF No. 6-1, PageID.117, ¶ 16).  The field office recommended to ICE's Headquarters Post-Order Detention Unit that the agency release Le from custody. (*Id.*).   The unit has yet to issue its own custody determination. (*Id.*; ECF No. 1-2, PageID.37, ¶ 15).  Le now seeks a writ of habeas corpus directing his immediate release from ICE custody. (ECF No. 1, PageID.26).

III.   Legal Standards

A section 2241 habeas petition is the appropriate medium "for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).  District courts may grant a writ of habeas corpus when the petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241.  In the event a district court entertains a habeas petition, it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

IV.     Analysis

    *A.      The Proper Respondent is Sheriff Goodnough*

A writ of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243.  Except in extraordinary circumstances, the only proper respondent in a habeas corpus proceeding is the detainee's immediate physical custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435-42 (2004).

Le alleges that Sheriff Goodnough is his "immediate custodian." (ECF No. 1, PageID.8, ¶ 13).  And under Michigan law, the Sheriff has "the charge and custody of the jails of his county, and of the prisoners in the same; and shall keep them himself, or by his deputy or jailer." Mich. Comp. Laws § 51.75.

Because the Court finds that Sheriff Goodnough is the proper respondent, it will dismiss the federal respondents from this action. *See Padilla*, 542 U.S. at 434 (observing that the federal habeas statute's "consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.").

    *B.      Substantive Arguments*

Turning to the merits, Le challenges his continued detention on both statutory and constitutional grounds.   Since federal courts "should avoid unnecessary adjudication of constitutional issues," the Court will first address Le's statutory arguments. *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001); *see also*

*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass on a constitutional question, although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

        1.      Violation of the Post-Removal Detention Statute

The Immigration and Nationality Act ("INA") authorizes the detention of noncitizens pending their removal from the United States. *See* 8 U.S.C. § 1231. The statute affords the Homeland Security Secretary 90 days from the date a removal order becomes administratively final to remove a noncitizen from the country, *i.e.*, the removal period.[4] *Id.* § 1231(a)(1)(A), (B)(i). The Secretary must detain noncitizens during the removal period. *Id.* § 1231(a)(2)(A).

On the other hand, the Secretary "may" detain only four categories of noncitizens *after* the 90-day removal period expires: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [he] determines 'to be a risk to the community'; and (4) those [he] determines to be 'unlikely to comply with the order of removal.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022) (quoting 8 U.S.C. § 1231(a)(6)). The

---

[4] A removal order becomes administratively final when "the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals" expires. 8 U.S.C. § 1101(a)(47)(B)(ii); *see also* 8 C.F.R. §§ 1003.39, 1240.14-15; *Riley v. Bondi*, 606 U.S. 259, 267 (2025). Prior to March 9, 2026, the appeal period was 30 days. 8 C.F.R. § 1003.38(b).

INA's use of the word "may" "suggests discretion," although not "unlimited discretion."[5] *Zadvydas*, 533 U.S. at 697; *see also Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

8 U.S.C. § 1231(a)'s implementing regulations supplement this statutory regime. They further classify the noncitizens who may be subject to continued detention, establish the process and criteria for assessing whether continued detention is warranted, and designate the government officials to whom the Homeland Security Secretary has delegated decision-making authority "to continue an alien in custody or grant release or parole." 8 C.F.R. § 241.4(a).

The regulations charge ICE field office personnel with the responsibility for performing an initial post-removal order custody determination as well as "any further custody determination concluded in the 3-month period immediately following the expiration of the 90-day removal period." *Id.* § 241.4(c); *see also id.* § 241.4(h)(1), (4). The initial custody review must occur before the 90-day removal period expires. *Id.* § 241.4(h)(1), (k)(1)(i). ICE's Headquarters Post-Order Detention Unit performs "all further custody determinations" for "any alien who has not been released or removed by the expiration of the three-month period after" the

---

[5] Although the INA assigns these post-removal functions to the "Attorney General," Congress transferred them to the Department of Homeland Security after enacting the Homeland Security Act of 2002. *See* 6 U.S.C. §§ 251(2), 552(d), 557; *see also New York v. United States DOJ*, 951 F.3d 84, 120 n.33 (2d Cir. 2020).

initial post-order custody review. *Id.* § 241.4(c)(2); *see also id.* § 241.4(k)(2)(ii). The initial headquarters review typically occurs "at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable." *Id.* § 241.4(k)(2)(ii).

The above framework governs Le's current detention status. An immigration judge (1) found him ineligible for admission to the United States, and (2) withheld his removal to Vietnam after concluding that Le's "life or freedom would be threatened" there. 8 U.S.C. § 1231(b)(3); *see also* 8 U.S.C. § 1182(a)(7)(A)(i)(I); 8 C.F.R. § 241.4(a)(1), (b)(3). (ECF No. 1-2, PageID.46). And, on November 10, 2025, the Homeland Security Secretary's designee – ICE's deputy field office director – determined that Le must remain detained since he poses a "significant risk of flight" pending his removal from the country. (ECF No. 1-2, PageID.50, 52).

The question now is whether Le may resort to these same legal provisions to compel his release from continued detention. He may not.

The first roadblock is statutory. The INA expressly precludes judicial review – even through a section 2241 habeas petition – of any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of the Attorney General or the

Secretary of Homeland Security."[6] 8 U.S.C. § 1252(a)(2)(B)(ii).  This language bars federal judges from second-guessing the Homeland Security Secretary's custodial determinations under section 1231(a)(6) and its implementing regulations.  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 n.4 (9th Cir. 2008) (stating that "[d]etention 'beyond' the removal period is discretionary and subject only to an administrative post-order custody review process."); *cf. Zadvydas*, 533 U.S. at 688 (intimating that section 1252 (a)(2)(B)(ii) bars "review of the Attorney General's exercise of discretion . . . under the post-removal-period detention statute.").

Another hurdle is precedential.  In *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022), the United States Supreme Court held that section 1231(a)(6) does not require the Secretary to "offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *Id.* at 576.  So Le "has no right to a bond hearing before a neutral decision maker" – and, therefore, no mechanism to compel his release – under section 1231(a)(6) or the applicable "the federal regulations." *Martinez v. Larose*, 968 F.3d 555, 564 (6th Cir. 2020).

---

[6] Le may not either petition for a writ of mandamus to compel ICE's Headquarters Post-Order Detention Unit to issue a decision regarding his continued detention. (ECF No. 1, PageID.7-8, ¶ 9).  The INA forecloses that avenue. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (barring the issuance of mandamus writs under 28 U.S.C. §§ 1361 and 1651 against the "Attorney General or the Secretary of Homeland Security").

Because both the INA and Supreme Court precedent forbid judicial review of the Homeland Security Secretary's post-removal custodial determinations, the portion of the habeas petition seeking relief under section 1231(a)(6) and its implementing regulations must be denied.

2.     Violation of *Zadvydas v. Davis*

The foregoing discussion illustrates why Le's challenge to the Homeland Security Secretary's *exercise of discretion* to continue his detention cannot succeed. But Le also seeks release from continued detention on an alternative, yet related ground – by assailing "the *extent* of the [Secretary's] authority" under section 1231(a)(6) to keep him in custody. *Zadvydas*, 533 U.S. at 688 (emphasis added). "And the extent of that authority is not a matter of discretion." *Id.*

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the United States Supreme Court defined the scope of the Secretary's post-removal detention authority by "read[ing] an implicit limitation into" section 1231(a)(6).  Accounting for constitutional due process concerns that would necessarily arise from permitting indefinite detentions, the Supreme Court interpreted section 1231(a)(6) to "limit[ ] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689.

To effectuate this implicit statutory gloss, the Court established a two-tiered burden-shifting framework.  The standard opens with a presumptively reasonable

10

six-month detention period to enable the Secretary to complete a noncitizen's removal. *Id.* at 701.  Once the six-month period elapses, the noncitizen must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*  The Secretary must then "respond with evidence sufficient to rebut that showing." *Id.*  The Supreme Court has stressed that the six-month presumption period "does not mean that every alien not removed must be released after six months." *Id.*  Rather, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In this case, the initial step is complete.  ICE has detained Le beyond the six-month period of presumptive reasonableness. (ECF No. 1-2, PageID.37, ¶ 15; ECF No. 6-1, PageID.117, ¶ 16).  And Le has satisfied his initial burden under *Zadvydas*. The record demonstrates that Le cannot return to Vietnam because his "life or freedom" would be threatened there. (ECF No. 1-2, PageID.46).  Le is not a citizen of any other country. (*Id.*, PageID.32, ¶ 3; ECF No. 6-1, PageID.114, ¶ 4).  ICE has not identified another country that is willing to accept Le's admission. (ECF No. 6-1, PageID.117, ¶ 17).  Nor has the agency engaged in any discussions with another nation about the possibility of removing Le to that country. (*Id.*).

The burden then shifts to Sheriff Goodnough.  To meet his obligation under *Zadvydas*, the Sheriff exclusively relies upon the declaration of ICE deportation

11

officer Zaid Bakko. (ECF No. 6-1, PageID.113-17). And Zakko attests only that "ICE ERO is in possession of a valid passport for Le and is exploring the possibility of removal to a third country." (*Id.*, PageID.117, ¶ 17). But this statement merely alludes to ICE's vague efforts to locate an, as yet, unidentified country that will accept Le's admission. It is insufficient to show that removal is likely to occur in the reasonably foreseeable future. *See Bernshtein v. United States Att'y Gen.*, No. 25-1153, 2026 U.S. Dist. LEXIS 25834, at *11-12 (M.D. Fla. Feb. 9, 2026) (ordering the petitioner's release after holding that an ICE deportation officer's statement that the agency was "continuing to explore third-country removal options in Petitioner's case" did not satisfy the government's *Zadvydas* burden); *see also Arish Rustami v. Noem*, No. 26-3018, 2026 U.S. Dist. LEXIS 40821, at *7-8 (D. Kan. Feb. 27, 2026) (government failed to meet *Zadvydas* burden where "[n]either respondents nor the declarant has even identified a potential third country for removal"); *Mohamed Ibrahim Hassan v. Welsh*, No. 25-3239, 2026 U.S. Dist. LEXIS 669, at *6-9 (D. Kan. Jan. 5, 2026) (same). So Sheriff Goodnough fails to adduce sufficient evidence to rebut Le's *Zadvydas* showing.

The Sheriff disputes this conclusion. Looking to *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020), he argues that Le cannot meet his *Zadvydas* burden without "evidence that some *identifiable barrier* would ultimately block [his] removal." (ECF No. 6, PageID.108) (emphasis added). A closer reading of *Martinez* indicates,

12

however, that the United States Court of Appeals for the Sixth Circuit never adopted so stringent of a test. *Martinez* instead holds that noncitizens cannot meet their *Zadvydas* burden when an extended post-removal detention stems from the noncitizen's *own efforts* to challenge an underlying immigration order. *See Martinez*, 968 F.3d at 565 (affirming the district court's conclusion that "after his ongoing appeals run their course, nothing impedes Melara's removal.") (internal quotation marks omitted).

*Mulla v. Adducci*, 178 F. Supp. 3d 573 (E.D. Mich. 2016) – another case Sheriff Goodnough references in support of the "identifiable barrier" test – says the same thing. There, the district court decided that the petitioner had not satisfied his *Zadvydas* burden after finding that "much of the delay has been attributable to the petitioner's *own efforts* at pursuing remedies to forestall or reverse the deportation order" rather than "complications that ICE has encountered in effecting his removal." *Id.* at 577 (emphasis added). And for that reason, the district court held that the petitioner's "effort to employ that delay to establish that his detention is 'indefinite' is unconvincing." *Id.* So, contrary to Sheriff Goodnough's position, neither *Martinez* nor *Mulla* ever grafted an "identifiable barrier" test onto the noncitizen's *Zadvydas* burden.

Because the Sheriff cannot meet the evidentiary burden *Zadvydas* imposes, Le's continued detention violates section 1231(a)(6)'s implicit limitation on "post-

13

removal-period detention" to a timeframe "reasonably necessary to bring about" his "removal from the United States." *Zadvydas*, 533 U.S. at 689.

### 3. Constitutional Due Process

Having found that Le's continued detention runs afoul of section 1231(a)(6)'s implicit time limitation on post-removal-period detentions, the Court declines to address whether the detention also violates the Due Process Clause of the Fifth Amendment to the United States Constitution. *See Lyng v. Northwest Indian Cemetery Protective Assoc.*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). Since adequate statutory grounds exist to invalidate Le's continued detention, there is no need to opine upon the constitutional ramifications of his confinement.[7]

### C. Release Conditions

Because Le's continued detention violates *Zadvydas*, the Court must grant the habeas petition and direct Sheriff Goodnough to release Le from custody. *See Zadvydas*, 533 U.S. at 699-700 (stating that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Le's release, though, will not be unconditional.

---

[7] At any rate, the Sixth Circuit Court of Appeals takes a dim view of these claims. *See Martinez*, 968 F.3d at 564 n.7 ("To the extent Melara's general due process claim . . . is not an indefinite-detention claim under *Zadvydas*, it is baseless.").

In *Zadvydas*, the Supreme Court acknowledged that in the event a district court orders the noncitizen's release from custody, the "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* The INA and its implementing regulations provide the requisite guidance for imposing appropriate release conditions on noncitizens who are awaiting removal. *See* 8 U.S.C. § 1231(a)(3); *see also* 8 C.F.R. § 241.4(j). The statute mandates, among other things, that released noncitizens "obey reasonable written restrictions on [their] conduct or activities" that the Homeland Security Secretary "prescribes for [them]." 8 U.S.C. § 1231(a)(3)(D).

Since there is no principled reason to depart from the current statutory and regulatory framework for imposing release conditions on noncitizens who are awaiting removal, the Court will direct Sheriff Goodnough to release Le from custody, subject to the release conditions the Homeland Security Secretary deems appropriate under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.4(j). Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus (ECF No. 1) is granted.

15

IT IS FURTHER ORDERED that Sheriff Goodnough is directed to release Le from custody, under reasonable conditions of supervision, no later than **Thursday, April 2, 2026**.

IT IS FURTHER ORDERED that the release conditions must adhere to the guidelines specified in 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.4(j).

IT IS FURTHER ORDERED that Sheriff Goodnough must file a status report with the Court no later than **Friday, April 10, 2026**, verifying his compliance with this opinion and order.

Dated: March 31, 2026                    s/ Robert J. White
                                         Robert J. White
                                         United States District Judge

16